# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| CEDRIC FLOOD, | ) | |
| #217089, | ) | |
| | ) | CIVIL ACTION NO. 9:16-1877-BHH-BM |
| Petitioner, | ) | |
| | ) | |
| v. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| CECELIA REYNOLDS, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

Petitioner, an inmate with the South Carolina Department of Corrections, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  The petition was filed on June 7, 2016.[1]

The Respondent filed a return and motion for summary judgment on August 8, 2016. As the Petitioner is proceeding pro se, a Roseboro order was entered on August 9, 2016, advising the Petitioner that he had thirty-four (34) days to file any material in opposition to the motion for summary judgment.  Petitioner was specifically advised that if he failed to respond adequately, the motion for summary judgment may be granted, thereby ending his case.  Petitioner thereafter filed a memorandum in opposition on August 31, 2016, to which the Respondent filed a reply memorandum on September 8, 2016.

---

[1]Filing date per Houston v. Lack, 487 U.S. 266, 270-276 (1988).

1



This matter is now before the Court for disposition.[2]

## Procedural History

Petitioner was indicted in Orangeburg County in February 2010 for kidnapping [Indictment No. 2009-GS-38-1776] and criminal sexual conduct (CSC), first degree [Indictment No. 2009-GS-38-1775] . (R.pp. 373-376). Petitioner was represented by Douglas Mellard, Esquire, and Mark Wise, Esquire. After a jury trial, Petitioner was found guilty on July 21, 2011 of kidnapping, and acquitted of CSC. (R.pp. 357-361). Petitioner was then sentenced to life imprisonment.[3] (R.p. 372).

Petitioner filed a timely appeal. He was represented on appeal by Susan Hackett, of the South Carolina Commission on Indigent Defense, Division of Appellate Defense, who raised the following issue:

> The trial court judge erred when he improperly coerced the jury into rendering a guilty [verdict] after sending them back to deliberate a second time, and having given them a second, coercive jury charge, after they insisted they were deadlocked, in violation of S.C. Code § 14-7-1330 (1976).

(R.p. 469).

On April 10, 2013, the South Carolina Court of Appeals affirmed Petitioner's conviction and sentence. (R.pp. 496-497); see also State v. Flood, Unpublished Op. 2013-UP-140

---

[2]This case was automatically referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(c)and (e), D.S.C. The Respondent has filed a motion for summary judgment. As this is a dispositive motion, this Report and Recommendation is entered for review by the Court.

[3]Prior to trial, the State served the Petitioner with notice it intended to seek a mandatory sentence of life without parole pursuant to S.C. Code § 17-25-45 based on Petitioner's prior convictions. (R.p. 365). Petitioner had been convicted in 1994 of kidnapping and CSC, second degree, and sentenced to twenty years imprisonment. (R.p. 364).



(S.C.Ct.App. Apr. 10, 2013). The Remittitur was issued on June 5, 2013. <u>See</u> Court Docket No. 14-6.

On July 29, 2013, Petitioner filed an application for post-conviction relief ("APCR") in state circuit court. <u>Flood v. State of South Carolina</u>, No. 2013-CP-38-875. (R.p. 378). Petitioner raised the following issues in his APCR:

> **Ground One:** <u>Ineffective Assistance of Counsel</u>. Trial counsel rendered the ineffective assistance of counsel in violation of [Petitioner's] rights guaranteed him by the Sixth and Fourteenth Amendments to the United States Constitution, and Article 1, §§ 3 and 14 of the South Carolina State Constitution for his failure to object to a coercive supplemental charge being given to the jury, after the jury advised the trial judge that they could not reach a unanimous decision on either charge, and after the trial judge had given an <u>Allen</u> charge.

> **Ground Two:** <u>Ineffective Assistance of Counsel</u>: Trial counsel rendered the ineffective assistance of counsel in violation of [Petitioner's] rights guaranteed him by the Sixth and Fourteenth Amendments to the United States Constitution, and Article 1, § 3 and 14 of the South Carolina State Constitution for failing to object to the Trial Judge not comporting with the South Carolina Code Ann. § 14-7-1330(1976).

(R.p. 385).

Petitioner was represented in his APCR by Jonathan D. Waller, Esquire, and an evidentiary hearing was held on Petitioner's application on May 27, 2014. (R.pp. 401-49). In an order filed September 4, 2014 (dated August 27, 2014), the PCR judge denied relief on the allegations in the APCR. (R.pp. 451-461).

Petitioner filed a timely appeal of the PCR court's order, in which he was represented by Kathrine H. Hudgins, Appellate Defender of the Division of Appellate Defense. Petitioner's counsel raised the following issue:

> The PCR judge erred in refusing to find counsel ineffective for failing to move for a mistrial pursuant to S.C. Code 14-7-1330 when the jury indicated they were



deadlocked a second time after receiving an <u>Allen</u> charge, and failing to object to the judge's coercive second instruction to continue deliberations.

<u>Petition for Writ of Certiorari</u>, p. 1 (<u>See</u> Court Docket No. 14-8, p. 5).

The South Carolina Supreme Court denied certiorari on March 25, 2016. <u>See</u> Court Docket No. 14-9. The Remittitur was filed on April 12, 2016. <u>See</u> Court Docket No. 14-10.

In his Petition for writ of habeas corpus filed in this United States District Court, Petitioner raises the following issues:

**Ground One:** The PCR court erred in finding that trial counsel was not ineffective for failing to move for a mistrial pursuant to S.C. Code § 14-7-1330 when the jury indicated they were deadlocked a second time after receiving an <u>Allen</u> thus, depriving Petitioner of his 6th and 14th Amendment to effective assistance of counsel and a fair trial.

**Ground Two:** The PCR court erred in finding that trial counsel was not ineffective for failing to object to the trial judge's coercive second instruction to continue deliberations, thus, denying Petitioner his 6th and 14th Amendment rights to effective assistance of counsel and a fair trial.

<u>See</u> <u>Petition</u>, pp. 6, 8.[4]

### **Discussion**

Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Rule 56, Fed.R.Civ.P; <u>see</u> Habeas Corpus Rules 5-7, 11. Further, while the federal court is

---

[4]The Respondent represents that the pages in the Appendix attached to the return were received by the Attorney General's Office in the same condition as the copies filed with this Court, and cannot be made more legible. The Respondent also notes that the transcript of the record, pages 59 and 60, are out of order and appear after page 62, while page 251 is missing from the Appendix and therefore unavailable for inclusion. However, the Respondent notes that page is not referenced in the Return. <u>See</u> Memorandum in Support of Summary Judgment, p. 4.



charged with liberally construing pleadings filed by a <u>pro se</u> litigant to allow the development of a potentially meritorious case; <u>See</u> <u>Cruz v. Beto</u>, 405 U.S. 319 (1972), and <u>Haines v. Kerner</u>, 404 U.S. 519 (1972); the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact where none exists. <u>Weller v. Dep't of Social Services</u>, 901 F.2d 387 (4th Cir. 1990).

Petitioner claims that his counsel was ineffective for failing to move for a mistrial and to object to the trial court's second <u>Allen</u>[5] jury charge as being coercive were raised in his APCR, where Petitioner had the burden of proving the allegations in his petition. <u>Butler v. State</u>, 334 S.E.2d 813, 814 (S.C. 1985), <u>cert</u>. <u>denied</u>, 474 U.S. 1094 (1986). The PCR court rejected these claims, making relevant findings of fact and conclusions of law in accordance with S.C.Code Ann. § 17-27-80 (1976), as amended. <u>See</u> <u>Flood v. State of South Carolina</u>, No. 2013-CP-38-875. These issues were also addressed in Petitioner's PCR appeal to the State Supreme Court. <u>See</u> Court Docket No. 14-9. Therefore, these claims are all properly exhausted.

The PCR judge found that: 1) Petitioner testified on his own behalf; 2) Petitioner testified that Mellard was appointed to represent him and Wise assisted him in his case; 3) Petitioner testified that neither Mellard nor Wise discussed the case with him, but repeatedly told him that they knew he was guilty; 4) Petitioner testified that Mellard "was just comin' at [him] with big numbers" and telling him he would receive a lengthy sentence if convicted; 5) Petitioner testified that Mellard

---

[5]<u>Allen v. United States</u>, 164 U.S. 492 (1896)[defining the charge used to encourage a deadlocked jury to reach a verdict]; <u>see</u> <u>Tucker v. Catoe</u>, 221 F.3d 600, 605 n. 4 (4th Cir. 2000)["[T]his instruction is given by a trial court when a jury has reached an impasse in its deliberations and is unable to reach a consensus.'" (quoting <u>United States v. Cropp</u>, 127 F.3d 354, 359 (4th Cir. 1997))].



had him evaluated and he discussed childhood head injuries with counsel; 6) Petitioner testified that the trial lasted three days and that Mellard did not speak to him during the trial; 7) Petitioner testified that counsel should have objected to jury notes during deliberations but that counsel failed to do so; 8) Petitioner also testified that trial counsel did not show him these notes; 9) Petitioner testified that he did discuss moving for a mistrial with counsel when the jury could not reach a verdict or after the trial court gave additional instructions, but that he asked counsel not to move for a mistrial because he thought he would be acquitted and did not want another trial;

10) Mellard testified that he has been practicing law since 1997 and that his practice was exclusively criminal defense; 11) Mellard testified that he was appointed while employed at the Orangeburg County Public Defender's Office, where he is still employed; 12) Mellard testified that a fellow public defender, Margaret Hinds, was originally appointed, but that he took over the case because Petitioner did not get along with Hinds; 13) Mellard testified that he asked Wise to act as his second chair, which is customary for cases that are likely going to trial; 14) Mellard testified that he filed the appropriate Rule 5/Brady[6] motions and reviewed these materials with the Petitioner; 15) Mellard testified that he also reviewed the elements of the offenses and potential sentences with the Petitioner; 16) Mellard testified that the State served Petitioner with its intention to seek life without parole pursuant to S.C. Code § 17-25-45 based on Petitioner's prior convictions; 17) Mellard elaborated that Petitioner had been convicted for the same crimes for a similar factual scenario and those were being used to seek enhancement; 18) Mellard testified that it was a significant concern that the State would seek to introduce those prior offenses, and he discussed this with the Petitioner; 19) Mellard testified that he sought and obtained a competency evaluation for Petitioner; 20) Mellard

---

[6]Brady v. Maryland, 373 U.S. 83 (1963).



testified that this is his standard practice when a client is facing a significant sentence; 21) Mellard testified that Petitioner was found competent to stand trial; 22) Mellard testified that Petitioner had also been evaluated previously during the pendency of his first set of similar charges and was likewise found to be competent;

       23) Mellard testified that he thinks he and Wise performed well during Petitioner's trial, particularly when cross-examining the state's witnesses; 24) Mellard testified that he was able to get an acquittal on the criminal sexual conduct charge, but that Petitioner was convicted of kidnapping; 25) Mellard testified that this verdict did not seem analogous to the facts presented at trial, and that he made this argument during post-trial motions; 26) Mellard testified that the jury sent several notes during deliberations, including difficulty reaching a consensus; 27) Mellard elaborated that his standard practice is to review all jury notes with his client and he has no reason to believe that he did not do so in the present case; 28) Mellard testified that in between the initial jury notes, the State offered Petitioner two plea deals, one for twenty-five years and a second for twenty years; 29) Mellard testified that it was Petitioner's decision to reject both plea offers and proceed forward because he felt confident about this jury reaching an acquittal; 30) Mellard testified he also discussed moving for a mistrial with Petitioner after the initial <u>Allen</u> charge given by the court and the subsequent charge, but that each time Petitioner again indicated he wanted to proceed forward with trial based on his belief that he would be acquitted of all charges; 31) additionally, Mellard testified he did not want to move for a mistrial or object for strategic reasons, because it was "the most favorable jury [he] was ever going to get" because the entire panel was in constant argument; 32) Mellard testified that the jury was yelling back [sic] and forth so much during deliberations that it was audible from the courtroom; 33) Mellard also testified that the bailiffs had to break up fights among



jurors numerous times; 34) however, Mellard testified that following the final instruction given by the court, the jury seemed calm and did not protest to any additional deliberation; 35) Mellard testified that he believed the jury would have informed the court if it did not think additional deliberation would be useful or they did not consent to additional deliberation, as it was very boisterous jury;

36) Wise testified that he acted as second chair on the case upon Mellard's request and that he was a fellow public defender; 37) Wise testified that during deliberations, he was sitting with both Mellard and Petitioner; 38) Wise testified that he specifically recalled discussing the jury notes with Petitioner, including the two final notes indicating that the jury could not reach a consensus; 39) Wise testified that there were in chamber discussions about how to proceed and additional charges to be given, which were then discussed with the Petitioner; 40) Wise testified that he, Petitioner, and Mellard were all in agreement that it would be best to give an additional charge to hopefully get the jury to make a decision since it was a favorable jury for Petitioner; 41) Wise testified that he specifically recalled speaking with Petitioner regarding moving for a mistrial, and that Petitioner was adamant that he wanted to proceed forward; 42) Wise testified, similar to Mellard, that this particular jury was very animated and argumentative; 43) Wise testified that following the court's final instruction to the jury, he did not hear any protests or other comments from the jury that they did not wish to deliberate further;

44) the uncontroverted testimony from all witnesses, including the Petitioner, is that Petitioner adamantly did not want counsel to object or move for a mistrial; 45) Mellard and Wise both testified that they reviewed all jury notes with Petitioner and discussed possible options, including moving for a mistrial or objecting, and that Petitioner advised them he wanted the trial to proceed



forward, including additional instruction from the court urging the jury to reach a verdict; 46) counsels' decision to refrain from objecting or move for a mistrial was based on informed conversations with their client and his adamant insistence that the jury proceed forward under guidance from the court to reach a verdict was prudent and in accordance with their client's wishes; 47) counsels' performance was reasonable based on professional standards; 48) no deficiency existed; 49) with regard to Petitioner's allegation that counsel was ineffective for failing to object to the trial court not comporting with S.C. Code Ann. § 14-7-1330 by giving the jury additional instructions following the <u>Allen</u> charge and urging the jury to reach a verdict, the trial court's additional instruction did not violate § 14-7-1330; 50) this case was akin to <u>Edwards v. Edwards</u>, 121 S.E.2d 432 (S.C. 1961) where the state Supreme court found that § 14-7-1330 was not violated because the jury made "no response or indication of unwillingness on the part of any member of the jury, but on the contrary they returned immediately to the jury room for further deliberations"; 51) the trial court did not violate § 14-7-1330; 52) therefore, trial counsel's decision to not object was reasonable and in accordance with professional norms, as such an objection would not have been warranted; and 53) no deficiency in counsel's performance existed.  (R.pp. 454-460).  As previously noted, the South Carolina Supreme Court denied Petitioner's PCR appeal wherein his counsel presented these issues. <u>See</u> <u>Flood v. State</u>, Appellate Case No.  2014-002164(Order filed Mar. 25, 2016).  <u>See</u> Court Docket No. 14-9.

Substantial deference is to be given to the state court's findings of fact.  <u>Evans v. Smith</u>, 220 F.3d 306, 311-312 (4th Cir. 2000), <u>cert</u>. <u>denied</u>, 532 U.S. 925 (2001) ["We . . . accord state court factual findings a presumption of correctness that can be rebutted only by clear and convincing evidence], <u>cert</u>. <u>denied</u>, 532 U.S. 925 (2001); <u>Bell v. Jarvis</u>, 236 F.3d 149 (4th Cir.



2000)(en banc), <u>cert</u>. <u>denied</u>, 112 S.Ct. 74 (2001).

> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C. § 2254(e)(1).  <u>See also</u> <u>Fisher v. Lee</u>, 215 F.3d 438, 446 (4th Cir. 2000), <u>cert</u>. <u>denied</u>, 531 U.S. 1095 (2001); <u>Frye v. Lee</u>, 235 F.3d 897, 900 (4th Cir. 2000), <u>cert</u>. <u>denied</u>, 533 U.S. 960 (2001).  However, although the state court findings as to historical facts are presumed correct under 28 U.S.C. § 2254(e)(1), where the ultimate issue is a mixed question of law and fact, as is the issue of ineffective assistance of counsel, a federal court must reach an independent conclusion.  <u>Strickland v. Washington</u>, 466 U.S. 668, 698 (1984); <u>Pruett v. Thompson</u>, 996 F.2d 1560, 1568 (4th Cir. 1993), <u>cert</u>. <u>denied</u>, 114 S.Ct. 487 (1993) (citing <u>Clozza v. Murray</u>, 913 F.2d 1092, 1100 (4th Cir. 1990), <u>cert</u>. <u>denied</u>, 499 U.S. 913 (1991)).

Nevertheless, with regard to the ineffective assistance of counsel claims that were adjudicated on the merits by the South Carolina state court, this Court's review is limited by the deferential standard of review set forth in 28 U.S.C. §2254(d), as interpreted by the Supreme Court in <u>Williams v. Taylor</u>, 529 U.S. 362 (2000).  <u>See</u> <u>Bell v. Jarvis</u>, <u>supra</u>; <u>see also</u> <u>Evans</u>, 220 F.3d at 312 [Under § 2254(d)(1) and (2), federal habeas relief will be granted with respect to a claim adjudicated on the merits in state court proceedings only where such adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States", or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding"].  Therefore, this Court must be mindful of this deferential standard of review in

10



considering Petitioner's ineffective assistance of counsel claims.

Where allegations of ineffective assistance of counsel are made, the question becomes "whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Strickland, 466 U.S. at 694. In Strickland, the Supreme Court articulated a two prong test to use in determining whether counsel was constitutionally ineffective. First, the Petitioner must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel's performance was below the objective standard of reasonableness guaranteed by the Sixth Amendment. Second, the Petitioner must show that counsel's deficient performance prejudiced the defense such that the Petitioner was deprived of a fair trial. In order to show prejudice a Defendant must show that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. Mazzell v. Evatt, 88 F.3d 263, 269 (4th Cir.1996).

Here, after careful review of the record and evidence in this case, and for the reasons set forth and discussed hereinbelow, the undersigned concluded that Petitioner has failed to meet his burden of showing that his counsel was ineffective under this standard. Smith v. North Carolina, 528 F.2d 807, 809 (4th Cir. 1975)[Petitioner bears the burden of proving his allegations when seeking a writ of habeas corpus].

**Ground One**

In Ground One, Petitioner contends that his counsel was ineffective for failing to move for a mistrial pursuant to S.C. Code § 14-7-1330 when the jury indicated they were deadlocked a second time after receiving an Allen charge, thereby depriving Petitioner of his 6th and 14th Amendment Rights to effective assistance of counsel and a fair trial.

11



Section 14-7-1330 of the South Carolina Code provides:

When a jury, after due and thorough deliberation upon any cause, returns into court without having agreed upon a verdict, the court may state anew the evidence or any part of it and explain to it anew the law applicable to the case and may send it out for further deliberation. But if it returns a second time without having agreed upon a verdict, it shall not be sent out again without its own consent unless it shall ask from the court some further explanation of the law.

In this case, the jury sent out a note at some point after receiving the first <u>Allen</u> charge informing the Court that they had not been able to reach a unanimous verdict. (R.p. 495). Before the trial judge responded to that note, the jury sent out a second note stating substantially the same comment about not being able to reach a verdict. (R.pp. 354, 432-433, 495). The trial court then brought the jury back in and charged them as follows:

I've gotten two notes from you. I did not respond to the first one, so I got the second one that's essentially the same thing. You know, it reminds me of when my children repeat things like I was hard of hearing, and I apologize for not getting back to you sooner than that. But let me tell you, I'm not going to recharge the law to you again, I'm not going to do that. But I want y'all – if y'all have ever been involved in Court proceedings before, y'all know that it takes a lot of people a lot of time and a lot of work just to get to Court. Okay? And we've been in this trial now for a few days, and I know these deliberations have been hard on y'all, and I know that [there] are some very hard decisions that you are being asked to make, and I know that there's serious disagreement among you. But I want to remind you that if you think it is tough on you, I want you to think about how tough it is on the parties.

Now, the parties want you to make a decision in this case, and they want *you to make that decision without compromising any of your convictions or your beliefs*. Now, considering that and considering that it's still early in the day, I want to apologize to you and tell you that rather than try this case again I'm treating this as a work day. Sometimes you've got to work overtime. So, I'm asking y'all to return to your deliberations and bring back a fair, just and impartial verdict. *Okay?* Thank y'all very much.

(R.pp. 354-355)[Emphasis Added].

The PCR Court found that this instruction did not violate the State law, and that



counsel was not ineffective for failing to object to this instruction, nor did Petitioner suffer any prejudice. (R.pp. 459-460). Petitioner has failed to establish any reversible error in this finding. Evans, 220, F.3d at 312. The South Carolina Supreme Court has held that "neither the language of § 14-7-1330 nor our cases applying the statute require the trial judge to inform the jury its consent is necessary before deliberating a third time. We decline to impose such a requirement." Buff v. S. Carolina Dep't of Transp., 537 S.E.2d 279, 282 (S.C. 2000). Rather, consent can be implied. Edwards, 121 S.E.2d at 436 ["There was no response or indication of unwillingness on the part of any member of the jury, but on the contrary they returned immediately to the jury room for further deliberation. No verbal acceptance of the request of the trial Judge was made, but consent was implied. Had there been a statement to the effect that further consideration of the case was without their consent, it would have become the duty of the trial Judge to discharge them."]; State v. Drakeford, 113 S.E. 307, 310 (S.C. 1922) [holding consent was implied where the jury did not insist a verdict could not be rendered and the jury did not complain about further deliberations].

In this case, the record reflects that the jury did not voice any objections when the trial judge sent them back to deliberate a second time. (R.pp. 354-355, 434-435, 443-444).[7] Furthermore, the judge specifically reminded the jurors when he sent them back to deliberate "to make that decision without compromising any of your convictions or your beliefs." (R.p. 355). In the trial court's instruction, he did not speak directly to the minority juror (who Petitioner apparently contends was in favor of "not guilty" on all charges[8]), but addressed the jury as a whole. Accordingly, Petitioner

---

[7]The transcript reflects that the trial court even inquired, "Okay?" and received no response from the jury other than them going to the jury room to further deliberate. (R.p. 355).

[8]The notes from jury reflect that there was one hold-out juror, but Petitioner has not pointed
(continued...)



has not shown that the State court's determination that the jury's consent to continue deliberating was implied based upon the record as a whole. Therefore, Petitioner has not shown that even if Petitioner's counsel had objected, that there was any basis for such objection in light of <u>Edwards</u>. Further, to the extent Petitioner's claim is that the state court erred in finding that § 14-7-1330 had not been violated, that by itself is not even a federal claim, as claims involving the application and interpretation of a state statute are not cognizable in federal habeas actions absent a showing of a federal constitutional violation. <u>Ashford v. Evans</u>, 780 F.2d 405, 407 (4th Cir. 1985); <u>Estelle v McGuire</u>, 502 U.S. 62, 67 (1991) [It is not the province of a federal habeas court to re-examine state court determinations of state law questions]. There has been no showing of a federal constitutional violation in this case.

Counsel testified that although they and Petitioner specifically discussed moving for a mistrial, they made a conscious decision *not* to make such a motion because they all believed that the jury may have been more favorable to the Petitioner than another jury might be. Indeed, Petitioner also testified at his PCR hearing that he believed that the jury was favorable to him and that he did not want to stop the trial, and in fact the jury did return a favorable verdict for the Petitioner of not guilty on the CSC charge. (R.pp. 357, 415, 424-425). Accordingly, Petitioner has not carried his burden of showing a federal violation, or that his counsel was ineffective for not objecting to the court's second charge based on the state statute or for failing to move for a mistrial. <u>Smith</u>, 528 F.2d at 809 [Petitioner bears the burden of proving his allegations when seeking a writ of habeas corpus]. While the decisions of trial counsel are always subject to being second guessed with the benefit of

---

[8](...continued)
to where in the record there is any indication to support his claim that the minority juror supported a "not guilty" verdict on both charges.

14



hindsight, tactical and strategic choices made by counsel after due consideration do not constitute ineffective assistance of counsel. Strickland, 466 U.S. at 689.  There is a strong presumption that counsel's conduct during trial was within the wide range of reasonable professional assistance, and this Court should not scrutinize counsel's performance by looking at the decisions made in an after the fact manner. Id. at 688-689; Bunch v. Thompson, 949 F.2d 1354 (4th Cir. 1991), cert. denied, 505 U.S. 1230 (1992); Horne v. Peyton, 356 F.2d 631, 633 (4th Cir. 1966), cert. denied, 385 U.S. 863 (1966); Burger v. Kemp, 483 U.S. 776 (1987); see also Harris v. Dugger, 874 F.2d 756, 762 (11th Cir. 1989), cert. denied, 493 U.S. 1011 (1989) [An informed decision by trial counsel should not be second guessed by a reviewing court.]

Therefore, Petitioner has not shown that the findings and rulings of the state courts on this claim were unreasonable.  Evans, 220 F.3d at 312; Williams v. Taylor, supra; Strickland v. Washington, supra.; Greene v. Fisher, 132 S.Ct. 38, 43 (2011)[observing that AEDPA's "standard of 'contrary to, or involv[ing] an unreasonable application of, clearly established Federal law' is difficult to meet, because its purpose] is to ensure that federal habeas relief functions as guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction"]. This claim is without merit and should be dismissed.

### Ground Two

In Ground Two, Petitioner contends that his trial counsel was ineffective for failing to object to the trial judge's "coercive" second instruction to the jury to continue deliberations, thus denying Petitioner his 6th and 14th Amendment rights to effective assistance of counsel and a fair trial. The Fourth Circuit has held that in reviewing an Allen charge for coerciveness, the Court should look to:



the charge in its entirety and in context; suggestions or threats that the jury would be kept until unanimity is reached; suggestions or commands that the jury must agree; indications that the trial court knew the numerical division of the jury; indications that the charge was directed at the minority; the length of deliberations following the charge; the total length of deliberations; whether the jury requested additional instruction; and other indications of coercion.

Tucker, 221 F.3d at 611.

In this case, the record reflects that the jury began deliberations at 4:25 p.m. on July 20, 2011. (R.p. 330). After receiving a question from the jury (approximately 30 minutes after they were charged) regarding the definition of kidnapping and criminal sexual conduct and apparently a desire to see a chart used by counsel, the trial court informed the jury that the chart was not evidence, but that he could recharge them on the definitions of kidnapping and criminal sexual conduct, which he did. (R.pp. 331-334). The jury then later asked to get a transcript of the victim's testimony. The trial court told counsel that there was no copy of the transcript and that the only alternative was to replay the victim's testimony for the jury. (R.p. 335). After the Court discussed the matter with counsel and Petitioner's counsel objected to the victim's testimony being replayed, the Court excused the jury for the night at approximately 9:30 p.m. (R.pp. 335-341). In the morning, the Court addressed and overruled defense counsels' objection about playing the victim's testimony for the jury and questioned the jury as to whether they had heard or seen certain media coverage, which they affirmed that they had not. The Court then played the victim's testimony again for the jury and they returned to the jury room to further deliberate. (R.pp. 347-350). The jury later sent a note stating that they could not come to a unanimous decision on either charge. (R.p. 351). The Court stated that they probably had not had enough time so he brought them out and gave them an Allen charge. (R.pp. 350-353). During this Allen charge, the trial court charged them not to "give up your firmly held



beliefs merely to be in agreement with your fellow jurors.  The majority should consider the minority's position, and the minority should consider the majority's position."  (R.pp. 352-353).  Subsequently, the jury sent out the two notes previously discussed, indicating that they had not been able to reach a unanimous decision. (R.p. 354).  Both notes basically stated the same thing: "We have a juror that has said for the past two days of deliberation that he will 'never' change his mind." (R.pp. 354, 495).  It is at that point that the trial judge gave the charge at issue.[9]  After receiving that charge at approximately 2:50 p.m. on July 21, 2011, the jury returned to the jury room, deliberated, and returned a verdict at 5:00 p.m.  (R.pp. 355-356).

Therefore, viewing the totality of the charge, the judge specifically told the jurors in the first Allen charge not to give up their firmly held beliefs merely to be in agreement with their fellow jurors and asked the majority to consider the minority's position as well as vice versa.  (R.p. 352-353).  When the jury was sent out again, the trial judge discussed how everyone had worked on the case, that he knew they were being asked to make a very hard decision, and again asked them all to try and make a decision "without compromising any of your convictions or your beliefs."  (R.p. 355).  He also referenced that it was early in the day, apologized to them and asked them to treat it as a work day, but with no threat that they would not be released if they could not make a decision. (R.p. 355).  Then, the trial court asked them "to return to your deliberations and bring back a fair, just and impartial verdict.  *Okay?*  Thank y'all very much."  (R.p. 355).  Despite the acknowledged outspokenness of the jury in this case, there was no objection from any of the jurors to returning to further deliberate.  (R.pp. 354-355, 434-435, 443-444).  Furthermore, the Judge did not speak solely to the minority juror, but addressed the jury as a whole, and *all* of the jurors at the end of the trial

_____

[9]See discussion, supra [charge set forth above herein]; see also R.pp. 354-355.

17



stated and affirmed in open court that the verdict they returned was their unanimous verdict. (R.pp. 357-361).

The State court found that counsel was not ineffective for failing to object to the re-charge of the jury as being unduly coercive. (R.pp. 458-459). Further, Mellard testified that he strategically (with Petitioner's knowledge and acquiesce) did not object to the jury charge because he believed they had the best jury they were going to get. (R.p. 425). Wise also testified that he talked to the Petitioner about a potential mistrial after one of the notes from the jury (he did not specify which note), but that Petitioner did not want a mistrial and that he felt like it was going to work out for him. (R.p. 441). Wise testified that they did not move for a mistrial because Petitioner was against stopping the trial and having to retry it. (R.pp. 443-444). Rather, he felt that it was going to work out in his favor. (R.pp. 442-444). Even Petitioner himself testified that Mellard had told him they should stop the trial, but that he had told Mellard he wanted to keep it going. (R.p. 415).

The undersigned does not find that Petitioner has carried his burden of showing that his counsel was ineffective for failing to object to the charge based on this record. Counsel and Petitioner all testified that they did not want to stop the trial because they all believed that Petitioner had the most favorable jury they were going to get. In fact, as noted above, the jury ultimately returned a favorable verdict for the Petitioner of not guilty on the CSC charge. (R.pp. 350-351, 357). Although Petitioner now speculates that if counsel had objected to the jury charge, that would have affected the outcome of the case and he could have received a more favorable result, this conclusory and wholly unsupported contention is insufficient to show his counsel was ineffective. The record does not reflect an unduly coercive charge under <u>Tucker</u>, and the decision not to object to the second charge was a tactical and strategic choice made by counsel after due consideration and consultation



18

with the Petitioner.  As has previously been noted, there is a strong presumption that counsels' conduct during trial was within the wide range of reasonable professional assistance, and this Court should not scrutinize counsel's performance by looking at the decisions made in an after the fact manner.  Strickland, at 688-689; Bunch, 949 F.2d 1354; Horne, 356 F.2d at 633; Burger, 483 U.S. at 776; see also Harris, 874 F.2d at 762 [An informed decision by trial counsel should not be second guessed by a reviewing court.].

Accordingly, Petitioner has not carried his burden of showing that his counsel was ineffective for failing to object to the final charge; Smith, 528 F.2d at 809 [Petitioner bears the burden of proving his allegations when seeking a writ of habeas corpus]; and as a result has also not shown that the findings and rulings of the state courts were unreasonable.  Evans, 220 F.3d at 312; Williams v. Taylor, supra; Strickland v. Washington, supra.; Greene, 132 S.Ct. at 43 [observing that AEDPA's "standard of 'contrary to, or involv[ing] an unreasonable application of, clearly established Federal law' is difficult to meet, because its purpose] is to ensure that federal habeas relief functions as guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction"].

This claim is without merit and should be dismissed.

### Conclusion

Based on the foregoing, it is recommended that the Respondent's motion for summary judgment be **granted**, and that the Petition be **dismissed**, with prejudice.



The parties are referred to the Notice Page attached hereto.



_____
Bristow Marchant
United States Magistrate Judge

September 19, 2016
Charleston, South Carolina

**Notice of Right to File Objections to Report and Recommendation**

  The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'"  *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

  Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see*  Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
Post Office Box 835
Charleston, South Carolina 29402

  **Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

21

